### TEXAS BITULITHIC CO. v. DALLAS CONSOL. ELECTRIC ST. RY. CO. et al.
### (No. 8762.)

(Court of Civil Appeals of Texas. Dallas. Feb. 17, 1923. Rehearing Denied March 17, 1923.)

**1. Municipal corporations ☜406(1)—City has only power to assess as is expressly or impliedly granted in charter.**

The city of Dallas has no power to levy a special assessment or other tax, unless the power is expressly granted by the terms of its charter or by necessary implication therefrom, and such power is not to be inferred, unless the implication is so clear as necessarily to reveal a purpose to grant it.

**2. Taxation ☜2—Power of taxation vests exclusively in Legislature.**

Power of taxation is vested exclusively in the Legislature, to be conferred upon municipalities only to whatever extent may be declared by statutes enacted or charters granted.

**3. Municipal corporations ☜417(1)—Charter, authorizing street improvements, impliedly authorizes construction of storm sewers and drains and assessment therefor.**

Though Dallas City Charter, art. 10, § 1, authorizing street improvements, does not expressly provide for the construction of storm sewers and drains, the construction of such drains and the power to make assessments therefor are authorized by the expressions "said term [street improvement] shall also include any other street improvement of a public nature and for a public benefit" and "otherwise improving the same."

**4. Municipal corporations ☜412 — City has authority to declare what kinds of work constitute part of local improvement for which local assessment can be made.**

While the power of a city to levy a special assessment for local improvements is limited strictly to the purposes provided for by its charter or by statute, yet it is within the province of the city, not arbitrarily but in the exercise of a sound discretion, to determine whether or not a particular kind of work is part of a local improvement for which the authority to impose a local assessment exists.

**5. Municipal corporations ☜460 — Cost of storm sewers and drains part of street paving, and properly included in local assessment.**

Under Dallas City Charter, art. 10, § 1, authorizing local assessments for street improve-

ments, the city authorities, having declared storm sewers and drains part of a street improvement and the construction of the sewer to be an improvement incident and essential to paving such street, the cost of constructing such storm sewer and drains was properly included as part of local assessment for such street improvement.

**6. Municipal corporations ☜417(1)—Charter provision for general assessment for sewers does not prohibit local assessment for sewers part of street improvement.**

The provision of Dallas City Charter, art. 2, § 4, providing that the board of commissioners may levy a tax on all taxable property within the city for the construction and repair of public sewers, which tax shall be used exclusively for that purpose, does not prohibit the commissioners from including in a local assessment for a street improvement the cost of storm sewers and drains necessarily incident to, and a part of, such improvement, since such section is merely permissive, and applies to the building of sewers independent of street construction.

**7. Municipal corporations ☜425(3) — Street railway liable to assessment for proportion of cost of storm sewer lying under track.**

Under Dallas city charter, empowering the city to assess against street railways the cost of that part of a street improvement between the rails and tracks of such street railway or within two feet of the outside of said rails and tracks, the city had no authority to assess against such railway for any part of a storm sewer not under the space comprehended between the rails and two feet on the outside of them, and the determination of the city commissioners in fixing the proportion to be paid by the street railway on any other basis created no liability therefor, since liability could not come into existence and no lien could be created until the construction was actually done, when the proportion of cost could then be determined.

**8. Constitutional law ☜70(3) — Injustice of exempting street railway company from fair assessment for storm sewer by reason of charter provision question for Legislature.**

The fact that a storm sewer, constructed as part of a street improvement, equally benefits every part of the street and the inadequacy or injustice of an assessment against a street railway for its proportion is no ground for disregarding the plain requirement of Dallas city charter that a street railway is liable for assessment only for street improvements between its tracks and within two feet from the outside of its rails; the justice of the statutory provision being a matter for legislative determination.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by the City of Dallas against the Dallas Consolidated Electric Street Railway Company and others for the benefit of the Texas Bitulithic Company, to recover an as-

---

sessment for street improvements, in which the latter intervened and sought recovery in its own name. From a judgment for defendant, the intervener appeals. Reversed and remanded.

Dabney, Goggans & Ritchie, of Dallas, for appellant.

Templeton, Beall, Williams & Worsham, and A. S. Rollins, all of Dallas, for appellee.

HAMILTON, J. This suit was instituted by the city of Dallas for the benefit of plaintiff in error against the defendant in error and its corporate predecessor, to recover an assessment levied against defendant in error for the construction of a storm sewer on Bryan street in the city of Dallas. The city of Dallas ordered the improvement of this street by paving it with certain material and by installing concrete curbs and gutters, and by the same order, and through the same proceedings by which the construction of curbs and gutters and paving was required, the construction of storm sewers and drains was also ordered. Defendant in error owned and operated a line of street railway on the street, and the tax for the improvements levied and charged against it was alleged to be for the cost of improving the street between the rails and two feet on the outside thereof. Defendant in error paid all of the tax levied against it for the street improvement, except that attempted to be fixed against it for the construction of storm sewers. This it declined to pay. The suit was filed, as aforesaid, by the city of Dallas, and plaintiff in error, having constructed all of the improvements for which payment was demanded, intervened, and sought to recover judgment in its own name, the tax having been levied for its benefit. The action was for recovery of the amount of the cost of the construction of the storm sewer and for foreclosure of the statutory lien alleged to exist against defendant in error's property as having been fixed under charter provisions to secure the payment of the amount of the demand. Judgment was rendered in favor of defendant in error upon the theory that the assessment against defendant in error was unauthorized by the charter of the city of Dallas, and also for the reason that, even if the power to make an assessment resided in the city of Dallas, yet the greater portion of the storm sewer was not constructed between the rails of the street railway nor within a distance of two feet on the outside thereof, although the assessment made by the city commission imposed 56.4 per cent. of the cost of such construction upon defendant in error.

There is no statement of facts before this court, but the findings of fact contained in the record, which findings are undisputed and are binding upon us, eliminate from the case every question except the question of whether or not the assessment made by the

city of Dallas for the construction of storm sewers in connection with improvements of the street is authorized by the provisions of the charter; and this further question (subject to its being determined that such authority did exist): Did defendant in error become bound in any event to pay for the construction of any portion of storm sewers which was not constructed between the rails or within two feet thereof? The appeal is rested upon the following propositions:

"The city of Dallas did and does have power to, and was authorized by its charter to, levy assessment against street railways occupying streets in said city for all of the cost of constructing storm sewers and drains between the rails and tracks of any such street railways or within two feet of the outside of said rails and tracks.

"That by failing to appeal from the hearing afforded before the levy of the assessment and of which they had due notice and by failing to bring any suit to set aside or contest the assessment levied and the determinations of the city made at said hearing, the defendants waived any right to contest the assessment and are estopped to contest it on the ground that the assessment was for a larger proportion or amount of work than was actually between the rails and tracks or within two feet of the outside thereof.

"The assessment having been duly and regularly levied and all proceedings with reference thereto required and provided by law having been taken, had, done, and performed, and reasonable attorney's fees having been incurred, the intervener was entitled to judgment in its own name for the amount assessed with interest, attorney's fees, costs, and foreclosure of lien."

There is no express authority granted to the city of Dallas by its charter to construct storm sewers by the levy of special assessments against property along the streets through which such sewers extend, nor to levy the cost of the construction of such sewers against railway lines extending through the streets, unless the term "street improvement," as defined in section 1 of article 10 of the charter, is sufficiently expansive in its meaning to embrace storm sewers. All the power reposed in the city to levy assessments for street improvements seems to be given it solely and exclusively by the terms of article 10 of the charter. Section 1 of this article, which, as above stated, defines street improvements, is in the following language:

"The term 'street improvement,' as embraced in this article, shall include the improvement of any street * * * highway * * * or any portion thereof within the city, by filling, grading, raising * * * paving * * * or otherwise improving same, or by the construction or reconstruction of sidewalks, curbs and gutters or repairing the same; and shall also include the laying out, opening, narrowing, straightening or otherwise establishing, defining and locating any street, avenue, public al-

ley, square, place or sidewalks; and said term shall also include any other street improvement of a public nature and for a public benefit.

"The board of commissioners shall have power to order the improvement of any public highway or highways or parts thereof within the city of Dallas, and shall have power to prescribe the nature and extent of such improvements.

"* * * When any person, firm or corporation owns any railroad or street railroad or railroad switch of any kind on such public highway or portion thereof ordered to be improved, such person, firm or corporation shall pay the whole cost of such improvements between the rails and tracks and for two feet on each side of the rails of such railroad or street railroad. * * * Whenever the contract shall be let for any such improvement, the board of commissioners shall levy a special tax upon the railroad, ties, rails, fixtures, rights and franchise of such railroad or street railroad for the pro rata share due from such road for improvements between their tracks and rails and two feet on each side thereof. Said tax shall be levied at or after the time such contract is let or executed, and shall become due and delinquent as the ordinance levying same may specify, and shall be a lien from the time of levy, and the proceeds thereof shall be used for the payment of the cost of such improvements. * * * Such assessments and lien may also be enforced by suit brought in any court having jurisdiction thereof."

Plaintiff in error takes the position that the question is whether the rule of ejusdem generis is to govern the construction of the final clause of the above copied section of article 10, and, further, whether, if applied to it, storm sewers would thereby be excluded from what was intended to be included in the expression "street improvements" as therein used. By the rule of ejusdem generis, general words in a statute following the designation of particular subjects or classes, will ordinarily be presumed to be restricted to the particular subjects or classes mentioned. Plaintiff in error states the rule to this effect, but insists that, since it is only a rule of construction, it does not override other rules of construction, and that, while the purpose of it is to preserve a meaning for particular words, it is not intended to render meaningless the general words used in connection with such particular words. It is accordingly argued that the particular words used in the above-quoted section of the city charter exhaust the class, and that under a construction holding the general words "otherwise improving" and "other street improvements of a public nature" to be confined to a meaning relating altogether to surface improvements would render them redundant and useless. Whereas, if these expressions were not construed, but were merely given their ordinary meaning and significance, they would include the construction of the storm sewer along Bryan street.

[1, 2] No power to levy a special assessment or other tax exists in the city of Dallas, unless the power is expressly granted by the terms of the charter or is given by necessary implication. It is not to be inferred unless the implication is so clear as necessarily to reveal a purpose to grant it. Municipal corporations, as has been often declared, have no inherent power of taxation. This power inheres exclusively in the Legislature, to be conferred upon municipalities by that department of government only to whatever extent may be declared by statutes enacted or by charters granted.

[3] We are of the opinion that, although the construction of storm sewers and drains is not expressly included in the term "street improvement" as it is defined in section 1, article 10, of the charter, yet the expressions "otherwise improving the same" and "said term (that is, street improvement) shall also include any other street improvement of a public nature and for a public benefit" ought to be declared to comprehend the construction of a storm sewer in connection with the paving of a street, especially if the construction of such storm sewer is a necessary incident to paving. If the sewer could be regarded as entirely independent of the street and as constituting no ingredient of constructing the paving, then the cost of constructing the sewer would not be a proper charge against defendant in error, for the reason that an assessment levied for such purpose would transcend the authority given the city of Dallas by its charter. But it seems that when a storm sewer is built for the purpose of draining the water off the surface of a particular street, it is regarded as a part of the street itself, and it has been held that under municipal authority to levy a special assessment for improving a street a municipality has the power to include in the assessment levied the cost of constructing a storm sewer. Gates v. City of Grand Rapids, 134 Mich. 96, 95 N. W. 998; Page & Jones on Taxation by Assessment, § 432. No authority which holds the contrary has been called to our attention.

The resolution which was duly adopted by the board of commissioners, ordering that the street be improved, provided that it be improved by one of the methods and with one of the materials named in the resolution, which resolution also provided that the street should be raised, graded, and filled, that concrete curbs be installed, and that storm sewers and drains necessary to the public improvement of the street be built. The city engineer was directed to prepare specifications for the various forms of improvement named in the resolution, including storm sewers and drains, and he did make and prepare such specifications, including storm sewers and drains, which were considered and acted upon through the processes lead-

ing to the letting of the contract and the construction of the storm sewer and drains in connection with the paving of the street. It thus appears that the city commission determined as a fact that the construction of the sewer was a part of the street improvement.

[4, 5] While the power of the city to levy a special assessment for local improvements is limited strictly to the purposes provided for by its charter or by statute, yet, it seems that it is within the province of the city to determine whether or not a particular kind of work is a part of a local improvement for which the authority to impose a local assessment exists. 28 Cyc. 1108. Of course a municipality does not possess. the authority or right arbitrarily to declare a particular improvement to be a local one incident to improvements which it has the express charter power to accomplish by means of a special assessment tax when in fact it is not. Its judgment and discretion in this respect must be soundly exercised in arriving at a decision as to whether or not such improvement is in fact an incident and necessary part of the improvement authorized, and that decision is always subject to judicial review. But, since the charter expressly authorizes as "street improvement" not only improvement of any street by doing the particular things specified in section 1 of article 10, but also "any other street improvement of a public nature and for a public benefit." It seems to us that the cost of constructing the storm sewer and drains is necessarily encompassed in the definition of "street improvement" contained in the charter, the board of commissioners, acting in conjunction with the city engineer, having determined the construction of the sewer to be an improvement incident and essential to the paving of the street.

[6] Defendant in error contends that because section 4 of article 2, City Charter of Dallas, provides that the board of commissioners of the city of Dallas may levy a tax on all taxable property in the entire city to pay for the construction and repair of public sewers, which tax shall be used exclusively for that purpose, no other tax for the construction of any sewer can be levied. We do not agree with this construction of the charter. The fact that the charter permits the board of commissioners to levy a special sewer tax for the construction of a sewer system, which may embrace sanitary sewers, does not preclude the city from levying a special assessment to include the cost of constructing a storm sewer in a street which is being paved, the construction of such storm sewer appearing to be a necessary incident to and part of the street improvement to be made. Section 4 of article 2 is merely permissive.

It applies to building sewers independent of street construction.

[7] There exists no authority in the city, however, to impose upon defendant in error any cost of street improvement beyond the cost of such improvement "between and under the rails, tracks and switches of such * * * street railroad, and two feet on the outside of the rails. * * *". Accordingly, we think that in no event could a greater portion of the cost of constructing the sewer and drains be imposed upon defendant in error than that incurred in building the part of the storm sewer which lies under the space comprehended between the rails and two feet on the outside of them. As 56.4 per cent. of the cost of constructing the sewer was levied against defendant in error, which the trial court found to be greater than the per cent. of the sewer laid under the part of the street of which the charter authorized improvements to be charged against defendant in error, and since there is nothing in the record from which it can be determined what part of the assessment should have been levied against defendant in error, we cannot say that liability exists against it in any particular amount. The fiat of the city commissioners in fixing the amount at 56.4 per cent. of the entire cost did not of itself create any liability or result in any lien against defendant in error's property. No liability could come into existence, and no lien could be created until the work was actually done, and then only upon the basis above indicated.

[8] We are not unmindful of the fact that an injustice might be done in assessing the cost of storm sewers upon the basis provided in the charter. A storm sewer laid under a particular street to drain it is related to all parts of the street uniformly to the same extent and in the same way. Its service is equally distributed to every portion of the street. It drains the whole area and every part of it with uniformity. Accordingly a just proportion of the cost to be charged against a street railway we think ought to be that per cent. of it which equals the per cent. of the entire paved area occupied by the street railway and two feet on the outside thereof, regardless of whether the sewer is laid altogether along the edge of the street or under the track area. But we cannot give the charter provision a construction to this effect without doing violence to its language. Legislation amending the charter, and only this, can accomplish that effect.

We accordingly reverse the judgment of the trial court and remand the cause for further proceedings to ascertain the extent of liability against defendant in error in conformity with the views above expressed.

Reversed and remanded.